**UNITED STATES, Appellee,**

v.

**Michelle M. ACCORDINO, Sergeant,
U.S. Air Force, Appellant.**

No. 46296.
ACM S25705.

U.S. Court of Military Appeals.

May 28, 1985.

For Appellant: *Major William H. Lamb* (argued); *Colonel Leo L. Sergi,* and *Captain Patrick A. Tucker* (USAFR) (on brief); *Colonel George R. Stevens.*

For Appellee: *Lieutenant Colonel Donal F. Hartman, Jr.* (argued); *Colonel Kenneth R. Rengert, Major Robert L. Kuster* (USAFR), and *Captain Brenda J. Hollis* (on brief).

*Opinion of the Court*

COX, Judge:

Two members of appellant's special court-martial panel executed post-trial affidavits indicating in substance that, in their view, the president of the court-martial, during deliberations on findings,[1] prema-

---

1. Appellant was convicted of wrongful use of cocaine and marihuana in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. She was sentenced to a bad-conduct

turely cut off the discussion and precipitated a vote. A majority of the Court of Military Review concluded that the affiants were incompetent to impeach their own verdict and refused to reach the merits of an "unlawful command influence" issue.[2] 15 M.J. 825, 842 (1983). We agree with Senior Judge Hemingway, concurring in the result, that the affidavits should have been considered, *id.* at 843, and we remand the case to that court for that purpose.

The affidavit of Captain W. alleges the following:

On the 11th and 12th of May 1982, I served as a member of a court-martial board hearing the case of Sergeant Michelle M. Accordino. On 12 May 1982, the Board retired for deliberations. I attempted to initiate a discussion on whether or not there was proof that the drug in question was cocaine but was told by the President of the Board that it didn't matter. I protested as did Lt. G ... (another member). I then attempted to discuss the question of the veracity of the two prosecution witnesses who allegedly saw the defendant use drugs. The President of the Board said there was no need to discuss this as by now everyone on the Board had made up his own mind. The Board then voted.

The affidavit[3] of Lieutenant G. alleges the following:

On the 11th and 12th of May 1982, I served as a member of a Court-martial board hearing the case of Sergeant Michelle M. Accordino. On 12 May 1982 the Board retired for deliberations. I at-

tempted to ask certain questions but was told by the board president that they were not of a pertinent nature. Another member, Captain W... attempted to ask certain questions but he was handled in the same manner. Because of my unfamiliarity with the Military Judicial System I feel that this may have influenced by decision.

Mil.R.Evid. 606(b) provides:

Upon an inquiry into the validity of the findings or sentence, a member may not testify as to any matter or statement occurring during the course of the deliberations of the members of the court-martial or to the effect of anything upon the member's or any other member's mind or emotions as influencing the member to assent to or dissent from the findings or sentence or concerning the member's mental process in connection therewith, except that a member may testify[4] on the question whether extraneous prejudicial information was improperly brought to the attention of the members of the court-martial, whether any outside influence was improperly brought to bear upon any member, or whether there was unlawful command influence. Nor may the member's affidavit or evidence of any statement by the member concerning a matter about which the member would be precluded from testifying be received for these purposes.

■ Recapitulating, there are only three circumstances under the rule when a court member's testimony [or affidavit] impeach-

discharge, forfeiture of $250.00 pay for 1 month, and reduction to the grade of E–3. The convening and supervisory authorities approved the sentence, and the Court of Military Review affirmed. 15 M.J. 825 (1983).

2. The granted issue in this case is:
WHETHER THE AIR FORCE COURT OF MILITARY REVIEW WAS INCORRECT WHEN IT REJECTED THE CLEAR INTENT OF THE DRAFTERS OF MIL. R. EVID. 606(b) AND RULED THAT MEMBERS OF A COURT–MARTIAL ARE INCOMPETENT WITNESSES TO PROVIDE EVIDENCE AS TO THE UNLAWFUL EXERCISE OF COMMAND INFLUENCE IN CLOSED DELIBERATIONS

AND THEREFORE DID IT ERR WHEN IT REFUSED TO RULE ON WHETHER THE APPELLANT HAD BEEN DENIED DUE PROCESS OF LAW BY THE IMPROPER EXERCISE OF RANK, BY THE PRESIDENT OF A COURT–MARTIAL IN CLOSED SESSION.

3. The Court of Military Review did not advert to this second affidavit in their opinion, but we will consider it in our disposition of the issue.

4. If a member may testify at a hearing on such matters, it is obvious that the member's affidavit can be considered in conjunction with a request for such a hearing.

ing a verdict is appropriate: (1) when extraneous information has been improperly brought to the attention of the court members; (2) when outside influence has been brought to bear on a member; and (3) when unlawful command influence has occurred. Only the latter circumstance is pertinent to this appeal.

The rule itself does not clarify what constitutes "unlawful command influence." However, the drafters' analysis to Mil.R. Evid. 606(b) states:

> Rule 606(b) is taken from the Federal Rule with only one significant change. The Rule, retitled to reflect the sentencing function of members, recognizes unlawful command influence as a legitimate subject of inquiry and permits testimony by a member on that subject. The addition is required by the need to keep proceedings free from any taint of unlawful command influence and further implements Article 37(a) of the Uniform Code of Military Justice. *Use of superior rank or grade by one member of a court to sway other members would constitute unlawful command influence for purposes of this Rule under Paragraph 74d(1)*. Rule 606 does not itself prevent otherwise lawful polling of members of the court, *see generally, United States v. Hendon*, 6 M.J. 171, 174 (C.M.A. 1979) and does not prohibit attempted lawful clarification of an ambiguous or inconsistent verdict. Rule 606(b) is in general accord with present military law.

Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition) (emphasis added).

As indicated, the majority of the Court of Military Review rejected the drafters' analysis and concluded from the face of Mil.R. Evid. 606(b) that "command influence" was merely "a particular type" of "outside in-

fluence." 15 M.J. at 832. In support of their thesis, they cited a host of Federal cases standing for the general proposition that jurors are competent to challenge verdicts where they have been subjected to influences from without, but not where the influences have arisen internally, such as through discussions with other jurors, or even intimidation and harassment by other jurors. *E.g., Parker v. Gladden*, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892); *United States v. Brooks*, 677 F.2d 907 (D.C. Cir. 1982); *United States v. Wilson*, 534 F.2d 375 (D.C. Cir. 1976); *United States v. Blackston*, 547 F.Supp. 1200 (S.D. Ga. 1982). *See also Woodward v. Leavitt*, 107 Mass. 453 (1871).[5]

However, these cases miss the point. Military courts, with their explicit rank structure, are quite different from their civilian jury counterparts. Thus Federal precedents, which naturally do not address a concept of "command influence"[6] within civilian juries, are of extremely limited value to us in construing our own rule. Furthermore, the words "unlawful command influence" in Mil.R.Evid. 606(b) do not ineluctably lead us to conclude that only *external* command influences were referenced. Therefore, we look to the drafters' comments to clarify this ambiguity. *Sutherland Stat Const* § 48.01 (C.Sands 4th ed. 1984). The drafter's analysis confirms our understanding that the use of rank by a court member to pervert military justice is not protected. *See United States v. Carr*, 18 M.J. 297, 302 (C.M.A. 1984); *United States v. Conners*, 23 C.M.R. 636 (A.B.R. 1957). *See also* para. 74*d* (1), Manual, *supra*. We take considerable comfort in the dearth of reported cases on the subject.

---

**5.** The Court of Military Review also cited several military cases, none of which dealt with the precise subject of *internal* panel influence based on rank. 15 M.J. at 839–41.

**6.** Fed.R.Evid. 606(b), similar to Mil.R.Evid. 606(b), permits jurors to testify as to "whether

extraneous prejudicial information was improperly brought to the jury's attention" and "whether any outside influence was improperly brought to bear upon any juror." There is no Federal provision concerning "unlawful command influence."

▇ This is not to suggest that courts-martial presidents have no administrative powers or that all aspects of the members' deliberations are subject to scrutiny. Senior ranking court members, like their juniors, are free to express their opinions in the strongest terms and to engage in the most robust discussions without fear of retribution or appellate sniping. Courts-martial presidents have to have the discretion to call for a vote·when, in their judgment, discussion of the issues is complete or further debate would be pointless. It is only when recourse is made to rank to "enhance" an argument—*i.e.*, to coerce a subordinate to vote in a particular manner—that the line is crossed.

▇ With regard to the instant case, the court members' affidavits were proper matters for examination by any and all authorities having jurisdiction over the case. The purpose of such review is, however, limited to looking for evidence of any of the three specific exceptions to Mil.R.Evid. 606(b). Under our legal threshold of review [Article 67(d), UCMJ, 10 U.S.C. § 867(d)], the affidavits do not indicate unlawful command influence. However, the Court of Military Review, with its broader factual-review authority [Article 66(c), UCMJ, 10 U.S.C. § 866(c)], must examine the affidavits under its own standards. Accordingly, it is appropriate to remand this case to that court for further review.

The decision of the United States Air Force Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that Court for further review.

Chief Judge EVERETT concurs.

Judge FLETCHER did not participate.